# EXHIBIT 3

```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and                                              Docket No.:
GEICO CASUALTY CO.,
                                                                   1:20-cv-01214-RRM-LB
                               Plaintiffs,

        -against-

NORTHERN MEDICAL CARE, P.C.,
OMAR F. AHMED, M.D.,
QUEENS WELLNESS MEDICAL, P.C.,
MADHU BABU BOPPANA, M.D.,
RESTORALIGN CHIROPRACTIC, P.C.,
DAVID S. KRASNER, D.C.,
WEI DAO ACUPUNCTURE, P.C.,
BORUCH LAOSAN, INC., and
IGOR MAYZENBERG, L.AC.,

                               Defendants.
-------------------------------------------------------------------X
```

## DECLARATION OF KATHY ASMUS

Kathy Asmus, pursuant to 28 U.S.C. § 1746, hereby declares the truth of the following:

1. I am employed by Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO") as a Claims Manager.

2. I have personal knowledge of the facts set forth in this declaration and would testify as to them in a Court of law if called upon to do so.

3. I respectfully submit this declaration in further support of GEICO's motion to stay Defendants Northern Medical Care, P.C. ("Northern Medical"), Restoralign Chiropractic, P.C. ("Restoralign Chiro"), and Wei Dao Acupuncture, P.C. ("Wei Dao", and, collectively with Northern Medical and Restoralign Chiro, the "Provider Defendants") from pursuing collection

arbitrations against GEICO in other forums, and to enjoin new collections proceedings against GEICO, while this federal court action is pending.

4. In connection with GEICO's application, it is essential to note that:

(i) In its Amended Complaint in this action, GEICO alleges – among other things – that the Defendants have used the Provider Defendants as vehicles to submit a massive amount of fraudulent "No-fault" insurance billing to GEICO; and

(ii) Defendants continue to actively attempt collection on their pending fraudulent billing through No-fault collections arbitrations and civil court lawsuits, despite the pendency of the present lawsuit, which seeks – among other things – a declaratory judgment to the effect that the Defendants may not collect on their pending fraudulent billing.

### I. **The Provider Defendants' Pending Collections Proceedings and the Need for Injunctive Relief**

5. The Provider Defendants began submitting billing to GEICO in 2014.

6. In total, Northern Medical has billed GEICO under various Current Procedural Terminology ("CPT") codes, including CPT codes for examinations, computerized range of motion and muscle strength testing, physical performance testing, outcome assessment testing, physical therapy services, neurological examinations, electrodiagnostic testing.

7. In total, Restoralign Chiro has billed GEICO under various CPT codes, including CPT codes for examinations, chiropractic manipulations, and stretching.

8. In total, Wei Dao has billed GEICO under various CPT codes, including CPT codes for examinations, acupuncture without electrical stimulation, acupuncture with electrical stimulation, cupping, and moxibustion.

9. GEICO's Amended Complaint alleges, among other things, that the billing submitted through the Provider Defendants misrepresented the nature, extent, and necessity of the services purportedly provided to GEICO insureds and billed to GEICO. The Provider

Defendants have submitted more than $4,500,000.00 in billing to GEICO for these services, including bills in the following manner:

(i) Northern Medical submitted (a) at least 175 charges for purported initial examinations under CPT code 99205 – the CPT code Northern Medical billed for virtually every initial examination – seeking reimbursement of $200.68 for each supposed examination; and (b) submitted at least 700 charges for purported outcome assessment testing under CPT code 99358 – the CPT code Northern Medical billed for every outcome assessment test – seeking reimbursement of $204.41 for each supposed outcome assessment test.

(ii) Restoralign Chiro submitted (a) at least 350 charges for purported initial examinations under CPT code 99203 – the CPT code Restoralign Chiro billed for its initial examination – seeking reimbursement of $54.74 for each supposed examination; and (b) submitted at least 3,000 charges for purported chiropractic manipulation therapy under CPT codes 98940 and/or 98941 – the CPT codes Restoralign Chiro billed for virtually every chiropractic manipulation – seeking reimbursement of $26.41 and $34.68 for each manipulation, respectively.

(iii) Wei Dao submitted (s) at least 700 charges including charges for purported acupuncture treatment under CPT code 97811 – a CPT code routinely billed by Wei Dao – seeking reimbursement of $25.69 for the 15 minute treatment session; and (b) submitted at least 300 charges including charges for purported "cupping" services under CPT code 97039 and purported moxibustion under CPT code 97799 – CPT codes routinely billed by Wei Dao – seeking reimbursement of $35.00 for each service.

10. The Provider Defendants are currently prosecuting 439 collection arbitrations through the American Arbitration Association ("AAA") against GEICO and 18 civil court cases, seeking to collect on charges that are subject of GEICO's declaratory judgment claim in the present case. The 439 collection arbitrations and 18 civil court lawsuits being prosecuted against GEICO by the Provider Defendants seek to recover, collectively, at least $1,120,426.11.

11. Specifically, Northern Medical is currently prosecuting against GEICO 65 collection arbitrations seeking to recover at least $180,058.55.

12. Restoralign Chiro is currently prosecuting against GEICO 17 collection arbitrations seeking to recover at least $12,846.70.

13. Wei Dao is currently prosecuting against GEICO 357 collection arbitrations seeking to recover at least $871,849.61.

14. Notably, 95 of these collection arbitrations were commenced after March 16, 2020 – the date GEICO filed its Amended Complaint in the within action. GEICO is also faced with the imminent possibility of many more collection arbitrations being commenced (or alternatively, collection lawsuits) because the Provider Defendants have submitted at least $6,271,000.00 in billing to GEICO since 2014.

15. The 18 civil court cases being prosecuted against GEICO by the Provider Defendants seek to recover, collectively, at least $55,671.25.

16. Specifically, Northern Medical is currently prosecuting 17 collection lawsuits in the civil court of Bronx County, Kings County, New York County, Queens County, and Richmond County seeking to recover at least $53,174.78.

17. Restoralign Chiro is currently prosecuting one collection lawsuit in the civil court of Kings County seeking to recover at least $2,496.47.

18. Injunctive relief, including a stay of pending No-fault arbitrations filed by the Provider Defendants and an injunction against filing additional arbitrations and collection actions is necessary in light of both the risk of multiple inconsistent judgments and the inability of insurers – such as GEICO – to present complex fraud claims and defenses in the context of New York's expedited No-fault arbitration system and congested civil courts.

19. In contrast to the present action, New York's No-fault arbitration system does not provide GEICO with a full and fair opportunity to litigate the legitimacy of the thousands of the Provider Defendants' No-fault insurance charges seeking reimbursement for a multitude of healthcare services purportedly provided to numerous insureds, including issues relating to the

protocol performance of the healthcare services and illegal fee-splitting, kickback, and referral arrangements. Indeed, the fraudulent scheme being perpetrated by the Provider Defendants becomes evident by analyzing the patterns across the claims as a whole, rather than viewing each healthcare service on a single bill for a single insured in a single arbitration proceeding, and by analyzing the evidence in the form of financial records and deposition transcripts demonstrating the Provider Defendants received a steady stream of patients who were treated at 105-20 Northern Boulevard, Corona, New York through illegal fee-splitting, kickback, and referral arrangements.

20. Accordingly, a brief substantive discussion of the pertinent procedures that apply in the context of No-fault collections arbitrations is warranted.

## II. New York No-Fault Insurance Arbitration System

21. To the extent that an insurer such as GEICO denies a healthcare provider's No-fault insurance claim, the healthcare provider may compel the insurer to arbitrate the claim. See N.Y. Ins. Law § 5106.

22. Pursuant to 11 NYCRR § 65-4.2(a)(2), the New York Department of Financial Services Superintendent has designated the AAA as the body that is responsible for the administration of the No-fault arbitration process. With the exception of a nominal filing fee paid by the healthcare provider/claimant, all of the costs associated with the conciliation and arbitration process before AAA are borne by the insurers in relation to the number of matters that are filed against them by claimants in a given year. See, e.g., 11 N.Y.C.R.R. §65-4.2(c)(1).

23. The arbitration process is generally commenced by the healthcare provider setting forth the reasons why it is contesting an insurer's denial of claim and a listing of the amounts in dispute. See 11 N.Y.C.R.R. § 65-4.2(b)(1). The matter then is assigned to a "conciliator" who is

responsible for making attempts to resolve the matter as an intermediary. If the dispute cannot be resolved within 60 days from the initiation of the conciliation process, the matter is then transferred by the conciliator to arbitration in order to have the dispute resolved by an arbitrator assigned by the designated organization. See 11 N.Y.C.R.R. §§ 65-4.2(b)(2)(iv), 65-4.5(a), and 65-4.5(f).

24.     Under this regulatory scheme, GEICO is required to pay AAA a mandatory non-refundable fee in every individual case where it is named as a respondent by a healthcare provider seeking payment on a claim for No-fault benefits that GEICO has denied. Thus, when a healthcare provider files a demand for arbitration with AAA, this automatically triggers a series of fees that are assessed against GEICO with respect to that case regardless of the size of the claim, whether the case is meritorious, or whether the applicant ultimately withdraws the claim at any stage during the process.

25.     The level of mandatory nonrefundable fees assessed against GEICO increases exponentially as each matter proceeds from conciliation through to arbitration before AAA. The average mandatory fees that were assessed against GEICO for each matter submitted by a healthcare provider to AAA from 2008 through present were several hundred dollars for each arbitration commenced against GEICO.

26.     The process is driven solely by the healthcare providers because they are not required to accept offers of settlement at the conciliation stage of the proceedings or to withdraw non-meritorious claims. In fact, healthcare providers routinely withdraw claims without prejudice after matters are moved to arbitration, but prior to or at the actual hearings, to avoid adverse determinations. Because of the manner in which the arbitration process operates, counsel

for the healthcare providers routinely seek to leverage the costs that are incurred by the insurers associated with the proceedings as a means to collect benefits to which they are not entitled.

27. Furthermore, when an arbitration hearing occurs, the expedited No-fault arbitration procedure set forth in 11 N.Y.C.R.R. § 65-4.1 generally contemplates no substantive discovery in advance of the hearing, nor does it generally permit any meaningful examination or cross-examination of witnesses.

28. What is more, to the limited extent that any discovery is even theoretically permissible in advance of the hearing, insurers such as GEICO generally are not permitted to seek or obtain pre-hearing discovery that could be used to demonstrate a pattern of medically-unnecessary or illusory treatment occurring across multiple patients and multiple claims. Rather, No-fault arbitrators generally do not look beyond the discrete bill and individual insured before them in a given hearing – to the limited extent that they would even allow any discovery at all.

29. In fact, No-fault arbitrations typically are heard and resolved in minutes, with arbitrators conducting one hearing after another, generally in 15-minute intervals over the course of a day. These circumstances render it impractical for an arbitrator to adequately consider a pattern of fraudulent treatment or even the need for discovery relating to multiple insureds and multiple treating healthcare providers.

30. Under the No-Fault Laws, healthcare providers, as assignees of persons injured in automobile accidents, also have the option to file state court proceedings to collect No-fault benefits, typically in civil courts of this state.  Although there is some ability to conduct discovery in civil court, the amount in controversy, the limited nature of the billing/healthcare service in dispute in each individual case, and the huge volume of cases pending in the civil court system, limits the civil court's ability to address complex fraud claims similar to the No-fault

contours of a fraudulent scheme involving patterns of fraudulent behavior that – by Defendants' design – is not readily apparent from the face of any individual bill or treatment record. In addition, even if an insurer attempts to pursue discovery involving a fraudulent scheme in a particular individual suit, the healthcare providers routinely ignore discovery requests and orders, withdraw individual suits or essentially default in an individual case to avoid any adverse rulings.

31.     For all of the above reasons, GEICO's proposed motion to stay the pending arbitrations and enjoin Defendants from commencing any new No-fault insurance collection arbitrations or any new No-fault insurance collection lawsuits against GEICO should be granted. No prior application for the relief requested herein has been made.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Woodbury, New York on February 9, 2021.

_____
Kathy Asmus