

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333

**STEVEN T. HENESY**
PARTNER
(516) 357-3308
steven.henesy@rivkin.com

February 12, 2021

**VIA ECF**

Honorable Judge Lois Bloom
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Government Employees Ins. Company, et al. v. Northern Medical Care, P.C.., et al.*
             Case No. 1:20-cv-01214-RRM-LB

Dear Magistrate Judge Bloom:

We are counsel for Plaintiffs (collectively "Plaintiffs" or "GEICO"). Pursuant to Local Rule 37.3(c), GEICO respectfully submits this letter-motion seeking an Order compelling compliance with a deposition subpoena issued to non-party Jerome Reed ("Reed"), the owner of a check cashing facility in Clifton, New Jersey – Cambridge Clarendon Financial Service, LLC d/b/a United Check Cashing ("Cambridge Clarendon") – at which checks issued by GEICO to Defendant Northern Medical Care, P.C. ("Northern Medical") were negotiated for untraceable cash under highly suspicious circumstances. A copy of the subpoena for Reed's deposition (the "Subject Subpoena"), along with the corresponding affidavit of service, is attached hereto as Exhibit "1". As set forth below, while Reed initially cooperated with Plaintiffs' attempts at obtaining discovery from Cambridge Clarendon, once Plaintiffs issued a subpoena for his deposition, Reed refused to comply.

By way of background, this action seeks to recover more than $2,900,000.00 that GEICO was defrauded into paying as a result of a massive fraudulent scheme involving the submission of thousands of fraudulent "No-Fault" insurance charges seeking reimbursement for a multitude of medically unnecessary, illusory, and otherwise noncompensable healthcare services provided to New York automobile victims covered by insurance policies issued by GEICO. The Fraudulent Services were the product of a scheme perpetrated by the Defendants at a purported medical clinic located at 105-20 Northern Boulevard, Corona, New York, where the Defendants generated high volumes of patients that could be subjected to the Fraudulent Services through the payment of hundreds of thousands of dollars in illegal kickbacks. See Docket No. 7, ¶¶ 83-102 and passim. The Defendants took great care to conceal the existence of these kickback payments, which were made to a series of shell companies in exchange for patient referrals. See, id., ¶¶ 85-87, 92, 93-95.

When GEICO issued reimbursement to the Defendants – and specifically, to Northern Medical – it did so by check. Numerous of the reimbursement checks issued by GEICO to Northern Medical were not deposited into any corporate bank account, but instead were negotiated for untraceable cash at Cambridge Clarendon, a check casher in Clifton, New Jersey.



In that context, in September 2020, Plaintiffs issued a subpoena *duces tecum* to Cambridge Clarendon seeking documents in connection with the cashing of the GEICO reimbursement checks issued to Northern Medical. In response, Cambridge Clarendon provided Plaintiffs with a series of documents related to the supposed authorization of certain individuals to cash Northern Medical checks at Cambridge Clarendon. In addition, Cambridge Clarendon later provided Plaintiffs with a declaration from Reed – Cambridge Clarendon's owner and operator – authenticating the produced documents. A copy of Reed's declaration, which encloses the produced documents, is attached hereto as Exhibit "2". The documents provided by Cambridge Clarendon, along with Reed's declaration, indicate, among other things:

(i) On June 27, 2013, an "Application for Commercial Check Cashing Account" was opened in Northern Medical's name at Cambridge Clarendon, despite the fact that <u>Northern Medical was not incorporated until August 2014 – more than one year after the application was submitted</u>. The application listed an individual named "Howard Greenleaf" as Northern Medical's "president", despite the fact that Northern Medical was – supposedly – solely owned and operated by Defendant Omar F. Ahmed, M.D. ("Ahmed"). Ahmed's name does not appear anywhere on the application.

(ii) Also on June 27, 2013, a "Resolution Granting Authority to Cash Company Checks" was submitted to Cambridge Clarendon in Northern Medical's name. The resolution indicated, among other things, that individuals named "Sam Timmat", "Neil Laster", and "Mary Recaro" – along with "Howard Greenleaf"[1] were authorized to negotiate Northern Medical checks for cash at Cambridge Clarendon. Ahmed's name does not appear anywhere on the resolution.

(iii) Despite the fact that individuals named "Howard Greenleaf", "Sam Timmat", "Neil Laster", and "Mary Recaro" were listed as the only people authorized to cash Northern Medical checks at Cambridge Clarendon, Reed's declaration indicates that at least 25 checks issued to Northern Medical – the majority of which were issued by GEICO – were negotiated for cash at Cambridge Clarendon by an individual named Alla Kuratova ("Kuratova"). Reed's declaration further indicates that Cambridge Clarendon was even in possession of a copy of Kuratova's driver's license.

Kuratova – who, according to Reed, numerous checks on Northern Medical's behalf – was charged in 2013 by the New York City Narcotics Prosecutor for her role in a massive prescription drug trafficking ring. According to a contemporaneous D.E.A. press release, Kuratova was alleged to have "recruited individuals [she] knew to pose as patients". A copy of the press release is attached hereto as Exhibit "3".

Based on this information, Plaintiffs issued a subpoena for Kuratova's deposition, which was conducted on December 3, 2020. During her deposition, Kuratova denied all knowledge of Northern Medical, Cambridge Clarendon, or any of the Defendants in this action, and claimed to have never cashed a check in New Jersey for Northern Medical or, for that matter, anyone. Kuratova's testimony

---

[1] Public records searches for these individuals have returned almost no results, and it appears that these names may have simply been fabricated on these submissions to Cambridge Clarendon.



further indicated that she had pleaded guilty to a felony in connection with her 2013 arrest. A copy of relevant excerpts of Kuratova's deposition are attached hereto as Exhibit "4".

Against this backdrop, Plaintiffs issued the Subject Subpoena for Reed's deposition. Once Reed was served with the deposition subpoena, Plaintiffs were contacted by an attorney, Neal Brunson, Esq., who informed Plaintiffs' counsel that he represented Reed. Plaintiffs' counsel made numerous attempts to schedule Reed's deposition at a time convenient for both him and his counsel, and agreed to hold the deposition via videoconference to minimize any health risks associated with the ongoing public health crisis. Reed and his counsel eventually simply stopped responding to Plaintiffs' counsel's inquiries, necessitating the instant application.[2]

Against this backdrop, and in light of the evidence summarized herein, Plaintiffs respectfully submit that there is no question that Reed has information relevant to the claims and defenses in this action. Reed's testimony concerning the circumstances under which Northern Medical insurance reimbursement checks were negotiated for untraceable cash – by individuals with no apparent connections to Northern Medical, a medical professional corporation, is relevant to, among other things, GEICO's plausible allegations that Northern Medical and its co-Defendants made kickback payments in exchange for patient referrals, and that they took steps to conceal the existence of those payments. The Court should therefore compel Reed's appearance at a deposition in this matter. See, e.g., Gov't Employees Ins. Co. v. Mayzenberg, No. 17-cv-2802 (ILG)(LB), 2018 WL 10517074, at *3 (E.D.N.Y. June 29, 2018) (Bloom, J.) (denying motion to quash subpoena for non-party deposition where plaintiffs provided "both facts and evidence to demonstrate a nexus between [defendant]'s corporations and the non-party movants"). Moreover, Reed has not provided any excuse – much less an adequate one – for his refusal to appear at a deposition in this action. See, e.g., Freund v. Weinstein, 2009 WL 4065585 (E.D.N.Y. 2009) (ordering non-party witness to comply with subpoena as no adequate excuse provided for non-compliance).

Therefore, Plaintiffs respectfully request that the Court issue an Order compelling Reed's appearance at a deposition via videoconference on a date to be agreed upon by his counsel and Plaintiffs' counsel.

We appreciate the Court's time and continuing attention to this matter.

Respectfully submitted,

RIVKIN RADLER LLP

Steven T. Henesy

cc: All counsel via ECF
Neal Brunson, Esq. (as counsel for Jerome Reed) via email

---

[2] During one call with Reed's counsel, Plaintiffs' counsel explicated, in detail, the reasons for Plaintiffs' issuance of the Subject Subpoena and the obvious relevance of Reed's testimony.

5145811.v1